IN THE CIRCUIT COURT OF MARIES COUNTY, MISSOURI

*FILED FOR RECORD*
*_____o'clock_____min._____M.*

**JAN 0 7 2013**

*MARK BUSCHMANN*
*Circuit Clerk & Recorder*
*Maries County, MO*

STEPHANIE HANSON,
Individually and on Behalf of All Others
Similarly Situated,

                Plaintiff,

  vs.

RADIOSHACK CORPORATION and GSI
COMMERCE SOLUTIONS, INC.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. _13M5-CC00005_

## ORIGINAL PETITION

COMES NOW Plaintiff Stephanie Hanson ("Plaintiff"), individually and on behalf of a Class of similarly situated individuals ("Class Members"), by and through her attorneys, and for her causes of action against Defendants, RadioShack Corporation and GSI Commerce, Inc. ("RadioShack" or "Defendants"), hereby states to the Court as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this class action under the laws of the state of Missouri, seeking compensation for violations of Computer Tampering and Merchandising Practices statutes as well as common-law claims of trespass to chattels, invasion of privacy by unreasonable intrusion, and unjust enrichment.

2.    Plaintiff and Class Members are Missouri residents who value their online privacy and do not want personal information related to their computer web browsing to be tracked without their consent.

3.    Plaintiff and Class Members do not want their computer software to be altered and impaired in unexpected and unreasonable ways by websites they visit or used by those web-

sites for unintended purposes. They do not want those websites to use their computer storage files in unexpected and unreasonable ways, such as to track their web browsing, profile them, and share that information with yet other parties.

4.      However, that is exactly what Defendants did. Instead of using standard, browser cookie tracking methods, Defendants accessed audiovisual software—Adobe Flash Player—on Plaintiff's and Class Members' computers. The intended purpose of the Flash Player is to enable website sound effects and video, but Defendants hacked the Flash Player, using it to plant tracking files on Plaintiff's and Class Members' computers and harvest information about their web-browsing without being detected.[1]

5.      Defendants' tracking files were permanently installed on Plaintiff and Class Members' computers, altering the way Plaintiff and Class Members' computers functioned and permanently impairing Plaintiff's and Class Members' ability to control tracking.

6.      Plaintiff and Class Members did not know Defendants had accessed the Flash Player software to alter and impair, permanently, the functioning of their computers and track their web browsing activities. Plaintiff and Class Members did not expect Defendants to do so, did not want Defendants to do so, and did not give Defendants permission to do so.

7.      Plaintiff and Class Members have no reasonable means of detecting and removing Defendants' tracking files. Unless Plaintiff and Class Members undertake costly and time-consuming remediation efforts, Defendants will continue to use these devices for ongoing tracking.

---

[1] Defendants were able to store their tracking files on Plaintiff's computer in the form of Flash Player storage files known as Local Shared Objects ("LSOs"). LSOs are not actually cookies, but have been referred to as "Flash cookies" when used to track consumers while circumventing their browser controls.)

8.     Defendants knew what they were doing. They deposited and used tracking files specifically to track Plaintiff's and Class Members' web-browsing, build profiles of Plaintiff and Class Members, and share that information with other parties—and to do so without detection.

9.     Defendants' actions, as more specifically alleged below, constitute violations of Missouri statutory and common law.

10.     Plaintiff brings this action to recover her own damages directly resulting from Defendants' unlawful actions, and she also brings this action on behalf of and to recover damages for the Class Members, and for equitable and injunctive relief.

11.     Defendants' unlawful actions were perpetrated against Plaintiff and Class Members during the Plaintiff Class Period, which Plaintiff proposes be defined as starting five years preceding the date of filing of the Original Petition in this matter and extending to the date the Court certifies the Class (the "Class Period").

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. The amount in controversy, however, is less than $75,000 per Plaintiff and Class Member individually and less than $5,000,000 in the aggregate.   No individual Plaintiff's or Class Member's claim is equal to or greater than seventy-five thousand dollars ($75,000), inclusive of costs and attorneys' fees. Moreover, the total damages of Plaintiff and Class Members, inclusive of costs and attorneys' fees, will not exceed $4,999,999 and is less than the five million dollar ($5,000,000) minimum threshold to create federal court jurisdiction. There is therefore no diversity or CAFA jurisdiction for this case.

3

13.     This Court has personal jurisdiction over Defendants pursuant to Missouri Code § 506.500, as Defendants have had more than minimum contact with the State of Missouri and have availed themselves of the privilege of conducting business in this state. In addition, as explained below, Defendants have committed affirmative tortious acts within the State of Missouri that give rise to civil liability.

14.     This Court has specific jurisdiction over Defendants because Defendants own and operate the www.radioshack.com website that is the subject of this lawsuit. Defendants' www.radioshack.com website deliberately targets and exploits Missouri residents, and this case arises out of and relates to that exploitation. Defendants, through their website, transmit Internet tracking technologies to and trespass upon the computers of Missouri residents in Missouri. Defendants then extract personal information about Missouri residents and exploit it for Defendants' financial gain.

15.     Venue is proper in this forum pursuant to Missouri Code § 508.010, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this county.

## AFFIRMATIVE PLEADINGS

16.     Plaintiff and Class Members expressly disclaim all claims and causes of action that exist or may exist under federal law, federal questions, diversity jurisdiction, and CAFA jurisdiction.  As such, this claim cannot be brought in or removed to federal court.

17.     This case involves state law claims brought solely by Missouri residents seeking less than $75,000 per plaintiff and class member individually and less than $5,000,000 in the aggregate, inclusive of all attorneys' fees, costs, interest, and any other recovery.

4

18.     The value of each the following categories of damages sustained, sought, and pled by Plaintiff and Class Members is less than $75,000 individually and less than $5,00,000 in the aggregate, inclusive of all attorneys' fees, costs, interest, and any other recovery:

A.  the effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff and Class Members due to the presence and operation of LSO tracking files and related computer code Defendant caused to be placed or activated on those computers, and which materially impaired the performance of privacy and security functions on those computers;

B.  the diminished fair market value of Plaintiff's and Class Members' computers due to the presence of LSO tracking files and related computer code Defendant caused to be placed or activated on those computers;

C.  the fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by LSO tracking files and related computer code Defendant caused to be placed or activated on those computers;

D.  the decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of LSO tracking files and related computer code Defendant caused to be placed or activated on those computers;

E.  the cost of bandwidth resources consumed by Defendant installation and use of LSO tracking files and for which Plaintiff and Class Members paid in Internet service provider subscription fees;

F.  the value of the personal data and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members and derivatives thereof possessed by Defendant;

G.  the value of any reports, analytics, analyses, and derivatives thereof of personal data and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

H.  the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of personal data and web browsing in-formation Defendant took and/or caused to be taken from Plaintiff and Class Members, and Defendant's other illegal and improper conduct;

I.  the out-of-pocket costs to Plaintiff and Class Members of repairing and their computers and computer software to remediate Defendant's LSO

5

tracking files and related computer code Defendant caused to be placed or activated on those computers;

J.  the cost of hiring computer consultants to identify and remove LSO tracking files and related computer code Defendant caused to be placed or activated on those computers;

K.  the cost of purchasing, installing, and operating software to remove and prevent re-installation and activation of LSO tracking files and related computer code Defendant caused to be placed or activated on those computers, including the fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by such software; and

L.  the out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by LSO tracking files and related computer code Defendant caused to be placed or activated on those computers.

19.  Plaintiff and Class Members do not seek to recover punitive damages or statutory penalties in this case.

20.  Pursuant to Missouri Rule of Civil Procedure 8(a), this pleading demands unliquidated damages. Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court

## PARTIES

21.  Stephanie Hanson is a citizen and resident of Maries County, Missouri who, during the Class Period, accessed Defendants' website at www.radioshack.com.

22.  RadioShack is a publicly traded Delaware corporation headquartered at Mail Stop CF3-201, 300 RadioShack Circle, Fort Worth, Texas 76102. RadioShack is a retailer of consumer electronics goods and services offered through interstate commerce, including substantial Internet sales to residents of the State of Missouri through its website, www.radioshack.com and its retail stores in the State of Missouri. RadioShack Corporation can be served through its regis-

6

tered agent, CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson, Missouri 65101.

23.     GSI Commerce Solutions, Inc., is an eBay company headquartered at 935 First Avenue, King of Prussi, Pennsylvania. GSI specializes in creating, developing and running online shopping sites for brick and mortar brands and retailers offering goods and services through interstate commerce, including substantial Internet sales to residents of the State of Missouri. GSI operates the Web site www.radioshack.com pursuant to agreements with RadioShack. GSI Commerce Solutions, Inc. can be served through the Secretary of State of Missouri, 600 West Main Street, Jefferson City, Missouri 65101. The mailing address to which the Missouri Secretary of State may mail a copy of process to GSI is 2145 Hamilton Avenue, San Jose, CA 95125.

## ALLEGATIONS OF FACT

### Plaintiff's Experience

24.     Plaintiff and Class Members value their online privacy and do not want their personal web-browsing to be monitored or tracked without their consent.

25.     Plaintiff and Class Members do not want their computer software to be altered or impaired in unexpected and unreasonable ways by websites they visit or used by those websites for unintended purposes.

26.     Plaintiff and Class Members do not want their computer storage files used in unexpected and unreasonable ways by websites they visit, such as to track their web-browsing, profile them, and share that information about them with other parties.

7

27.     Plaintiff and Class Members consider their personal and confidential information to be economically valuable to them and they consider their ability to maintain the privacy and confidentiality of information on their computers to be economically valuable.

28.     Defendants control and operate the website, www.radioshack.com, which provides a variety of marketing, consumer engagement, customer care, payment processing, and technology integration services.

29.     Plaintiff has visited www.radioshack.com on multiple occasions during the Class Period.

30.     During Plaintiff's visits to www.radioshack.com, including on August 24, 2008 and March 11, 2012, she requested and viewed information about consumer electronics products.

31.     Plaintiff considered such requests and the fact that she viewed particular information to be a personal, confidential, and sensitive matter.

32.     Unbeknownst to Plaintiff, Defendants permanently installed tracking files on her computer so that, along with a unique ID and information about her gender, age, and zip code, Defendants collected, retained, and compiled unique information about her web activities each time she visited.

33.     Defendants combined the information they collected from her with a unique identifier they assigned to her, so that they could continue to track her individual activities and collect information about her in a profile stored in Defendants' databases.

34.     Further, Defendants shared and exchanged Plaintiff's uniquely identified web-browsing information with third parties.

8

35.     Class Members visited www.radioshack.com during the Class Period and were subjected to Defendants' conduct substantially similar to that experienced by Plaintiff, described in paragraphs 3028 through 34, above.

## RadioShack's Technology and Business Model

36.     Flash Player is a software product distributed by Adobe Systems Incorporated ("Adobe"). Flash Player software is installed on the computers of the majority of Missouri consumers, including Plaintiff and Class Members.

37.     Flash Player's intended purpose is to enable website sound effects and video for online content such as video clips and interactive games. When a user plays Flash-based content on a website, the website can capture input from the user's mouse or keyboard, such as a user's command to pause a video or make a move in a game.

38.     However, when Plaintiff's and Class Members' Flash Player visited Defendants' website, Defendants hacked Plaintiff's and Class Members' Flash Player software instead of using it for its intended purpose. Defendants did so to track Plaintiff's and Class Members' web activities.

39.     Specifically, Defendants transmitted Flash videos to Plaintiff's and Class Members' computers, but the videos were essentially invisible, silent movies, so Plaintiff and Class Members were not aware of the transmission.

40.     By transmitting these invisible and silent movies, Defendants gained the opportunity to plant LSO tracking files (*see* n.1, *supra*) in the storage of Plaintiff's and Class Members' Flash Player software and use those files to harvest information from Plaintiff's and Class Members' each time they visited www.radioshack.com or websites affiliated with Defendants for tracking purposes.

9

41.     LSOs, are intended to store information such as a user's Flash Player volume preference or game score, or Flash content for the user to view. Defendants, however, used the LSO tracking files to permanently store and then repeatedly harvest and compile information about Plaintiff's and Class Members' web-browsing activities.

42.     Plaintiff and Class Members did not give Defendants permission to repurpose their Flash Player software, plant LSO tracking files in Flash Player storage, track their web browsing, and compile the information collected in Defendants' profile databases.

43.     Plaintiff and Class Members had no reasonable means of detecting or controlling Defendants' use of their Flash Player software and storage or Defendants' tracking activities.

44.     Defendants were aware of this, and they intentionally used LSO tracking files as a substitute and/or backup for browser cookies that enabled them to evade Plaintiff's and Class Members' detection or control.[2]

45.     Defendants' repurposing of Plaintiff's and Class Members' Flash Player and use of LSO tracking files was unreasonable and contrary to industry-standard practices.[3]

---

[2] Users' lack of any reasonable means to detect and manage LSOs are just two characteristics that distinguish LSO tracking files from standard browser cookies. Differences between LSOs and browser cookies are summarized in the allegations of Attachment A, hereto.

[3] Adobe and the Federal Trade Commission have condemned the repurposing of users' Flash Player software. *See 3 Responses to Adobe's small step forward on Flash-cookie control*, Wiebke Lips, Adobe Systems Inc., Jan. 29, 2010, available at http://blog.privacychoice.org/2010/01/29/adobes-small-step-forward-on-flash-cookie-control ("Adobe does not support the use of our products in ways that intentionally ignore the user's expressed intentions"); *see also* Adobe Systems Incorporated Letter to Federal Trade Commission, Jan. 27, 2010, available at http://www.ftc.gov/os/comments/privacyroundtable/-544506-00085.pdf; Analysis of Proposed Consent Order, *In the Matter of ScanScout, Inc.* at 1, Fed. Trade Comm., File No. 1023185 (Nov. 11, 2011), available at http://ftc.gov/os/caselist/1023185/111108 scanscoutanal.pdf and http://ftc.gov/opa/2011/11/scanscout.shtm (FTC discussion of ScanScout's misuse of LSOs).

46.    Defendants' conduct described above was intentional in that Defendants under-
took a number of deliberate, coordinated actions solely to effect their tracking processes. For
example:

> A. In Defendants' web pages, Defendants embedded instructions that con-
> sisted of or caused the execution of computer code (*i.e.*, executable pro-
> grams, command procedures, scripts, or other computer instructions).
>
> B. This computer code caused Defendants' invisible, silent "movies" to be
> transmitted to Plaintiff's and Class Members' computers, where it installed
> Defendants' LSO tracking.
>
> C. The computer code in Defendants' web pages also included code to then
> use the LSO tracking files in harvest and upload information about Plain-
> tiff's and Class Members' web-browsing.
>
> D. On Defendants' computers, Defendants processed the uploaded informa-
> tion from Plaintiff and Class Members, analyzing it, incorporating it into
> individual, behavioral profiles, storing the information in their databases,
> and exchanging information from and about Plaintiff and Class Members
> with other parties.

47.    Defendants engaged in the above-described conduct to gain benefits for them-
selves in that Defendants used the information they collected from Plaintiff and Class Members
to: (i) market goods and services to Plaintiff and Class Members; (ii) exchange the information
with online information brokers and ad networks; and (iii) enable ad networks to serve targeted
ads to Plaintiff and Class Members, which also enables the ad networks to engage in their own
tracking of Plaintiff and Class Members.[4]

48.    Defendants collected and shared with third parties information that included
Plaintiff's unique identifier, zip code, home page selected by Plaintiff, web page previously vis-

---

[4] The market for private web-browsing information such as the kind Defendants collected from this
Plaintiff and Class Members is so robust that exchanges have been established where companies can
quickly and efficiently buy and sell such information or, in real-time buy and sell the opportunity to serve
an ad to a consumer who is visiting a particular website at that moment.

ited, and settings for software on Plaintiff's computer, including Java, JavaScript, and Adobe Flash Player.

49.     Defendants generated revenue by disclosing information about Plaintiff's and Class Members' web-browsing activities to third parties.

**Injuries and Damages Resulting from RadioShack's Conduct**

50.     Plaintiff and Class Members have suffered actual and nominal damages as a result of Defendants' unlawful actions as alleged herein. Categorically, the type and nature of damages sustained by Plaintiff are the same or substantially similar to such damages sustained by Class Members. Accordingly, damages alleged hereafter will be alleged as Plaintiff's damages that have been incurred individually and collectively by the Plaintiff and each of the Class Members.

51.     Defendants' unauthorized and unlawful installation of tracking files on Plaintiff's and Class Members' computers, as described and explained herein, has caused physical damage to those computers, inasmuch as such tracking files are considered to be computer contaminants which cause injury to the computers' data storage and processing capabilities and otherwise interfere with Plaintiff's intended uses and purposes for her property.

52.     Defendants' tracking files were permanently installed on Plaintiff's computer.

53.     Defendants tracking files permanently altered the way Plaintiff's computer functioned, making Plaintiff's web-browsing activity available for adding to Defendants' database of behavioral profiles whenever Plaintiff visited Defendants' website or a website with which Defendants affiliate for tracking purposes.

54.     Because Defendants' tracking files are hidden and lie outside of Plaintiff's reasonable means to detect and control, Defendants' tracking files permanently impaired Plaintiff's ability to control tracking by Defendants and their affiliates.

12

55. Because Defendants' tracking files and tracking processes function as substitutes and back-ups for standard browser cookies, Defendants, through their conduct, have effectively evaded and negated the utility of privacy and security controls in Plaintiff's web browser software.

56. Because Defendants' tracking files lie outside of Plaintiff's reasonable means to detect, control, and remove, Plaintiff must undertake costly and time-consuming professional assistance to remediate the ongoing effects of injuries caused by Defendants.

57. Further, Plaintiff has no means to effect remediation of Defendants' continued possession and use of profile information they previously collected.

58. Defendants' Flash LSOs unlawfully and, without authorization, identified, acquired, and conveyed Plaintiff's personal,.financial and browser history information back to Defendants for Defendants' use, benefit, and financial gain. The data and information harvested by Defendants have an economic value for purposes of targeted advertising, marketing, research, and behavioral profile purposes. Defendants' theft of such data and information without notice or compensation to Plaintiff has deprived Plaintiff of said economic value.

59. Consequently, Plaintiff has incurred damage in the sense that there is an economic expense associated with the professional removal of the Defendants' tracking files and the repair of the damages described above.

60. In addition to the actual damages as described herein above, Plaintiff has also incurred unspecified nominal damages recoverable at law as a result of Defendants' unlawful conduct.

61. The injuries and damages resulting from Defendants' conduct constitute and/or are the result of advertising injury committed in the State of Missouri.

62.     Plaintiff and each Class Member have sustained and/or will imminently sustain

losses, injuries, and damages which include, but are not limited to:

A.     the effectively permanent diminution in value and utility of computers
purchased and owned by Plaintiff and Class Members due to the pres-
ence and operation of LSO tracking files and related computer code
Defendants caused to be placed or activated on those computers, and
which materially impaired the performance of privacy and security
functions on those computers;

B.     the diminished fair market value of Plaintiff's and Class Members'
computers due to the presence of LSO tracking files and related com-
puter code Defendants caused to be placed or activated on those com-
puters;

C.     the fair market value of the hard drive space on Plaintiff's and Class
Members' computers occupied by LSO tracking files and related
computer code Defendants caused to be placed or activated on those
computers;

D.     the decreased performance and diminished functionality over time of
Plaintiff's and Class Members' computers as a result of LSO tracking
files and related computer code Defendants caused to be placed or ac-
tivated on those computers;

E.     the cost of bandwidth resources consumed by Defendants installation
and use of LSO tracking files and for which Plaintiff and Class Mem-
bers paid in Internet service provider subscription fees;

F.     the value of the personal data and web browsing information Defend-
ants took and/or caused to be taken from Plaintiff and Class Members
and derivatives thereof possessed by Defendants;

G.     the value of any reports, analytics, analyses, and derivatives thereof of
personal data and web browsing information Defendants took and/or
caused to be taken from Plaintiff and Class Members;

H.     the increased value of Defendants' web properties, profit from mer-
chandise sales, and any additional revenue obtained as a result of per-
sonal data and web browsing information Defendants took and/or
caused to be taken from Plaintiff and Class Members, and Defendants'
other illegal and improper conduct;

I.     the out-of-pocket costs to Plaintiff and Class Members of repairing and
their computers and computer software to remediate Defendants' LSO

14

tracking files and related computer code Defendants caused to be placed or activated on those computers;

J.     the cost of hiring computer consultants to identify and remove LSO tracking files and related computer code Defendants caused to be placed or activated on those computers;

K.     the cost of purchasing, installing, and operating software to remove and prevent re-installation and activation of LSO tracking files and related computer code Defendants caused to be placed or activated on those computers, including the fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by such software; and

L.     the out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by LSO tracking files and related computer code Defendants caused to be placed or activated on those computers.

## CLASS ACTION ALLEGATIONS

63.    Pursuant to Missouri Rule of Civil Procedure 52.08, Plaintiff brings this action on her own behalf and on behalf of a proposed class of all other similarly situated persons ("Class Members" of the "Class") consisting of:

all persons residing in the State of Missouri who used computers in the State of Missouri, and whose computers, and/or computer systems, networks, programs, and/or data residing on or connected to those computers, were, through Defendants' conduct, modified, damaged, accessed, and/or altered, and/or whose private information was acquired without such persons' authorization or consent during the Class Period.

64.    Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three

15

years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of con-

sanguinity to such judge.

65.    The Class is comprised of over one thousand persons located in the State of Mis-

souri. It is therefore impractical to bring all members of the Class before the Court individually.

66.    There exist questions of law and fact common to all members of the Class. These

common questions of law and fact predominate over any individual questions affecting Class

Members. Common legal and factual questions include, but are not limited to, the following:

    A.    whether Defendants modified, damaged, accessed and/or altered Plain-
tiff's and Class Members' computers;

    B.    whether Defendants disclosed or took data, programs, or supporting
documentation, residing or existing internal or external to Plaintiff's
and Class Members' computers, computer systems, or computer net-
works;

    C.    whether Defendants acted with intent;

    D.    whether Defendants had authorization to modify, damage, access
and/or alter Plaintiff's and Class Members' computers;

    E.    whether Plaintiff and Class Members are entitled to compensatory
damages, and the amount of such damages;

    F.    whether Defendants' tracking of Plaintiff's and Class Members' web
activity constitutes an invasion of privacy;

    G.    whether Plaintiff and Class Members are entitle to recover for the fol-
lowing damages and injuries alleged in paragraph 58, above.

67.    The claims of the Plaintiff, the proposed class representative, are typical of the

claims of the Class in that:

    A.    Plaintiff's computer, like the computers of all Class Members, was ac-
cessed and altered by Defendants;

    B.    Plaintiff, like all Class Members, has been damaged by Defendants'
unlawful actions; and

      C.    the factual basis and causes of action for the claims Plaintiff asserts are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

68.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests which conflict with the Class and has retained attorneys who are experienced in the prosecution of complex consumer class action litigation involving computers and the Internet.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members in impracticable, and this action will be manageable as a class action. There will be no difficulty in the management of this class action.

70.    Prosecuting individual actions would unduly increase the cost of litigation and cause delay, not only to Plaintiff and Class Members, but also to Defendants and the Court.

71.    In contrast, a class action will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

72.    Class treatment of the claims asserted by Plaintiff is superior to other methods of adjudicating the claims of the Class in that:

      A.    the prosecution of separate actions by individual members of the class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards of conduct for Defendants;

      B.    adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the separate adjudications or would substantially impair or impede their ability to protect their own interests; and

      C.     class action treatment avoids the waste and duplication inherent in numerous individual actions and conserves the resources of the Court.

73.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**COUNT I**
**COMPUTER TAMPERING IN VIOLATION OF MISSOURI LAW**

74.     Plaintiff re-states and incorporates paragraphs 1–73 as if fully set out herein.

75.     Defendants' actions were perpetrated against Plaintiff and Class Members in violation of Missouri's Computer Tampering statute, §§ 569.095 (tampering with computers) 569.097 (tampering with computer equipment), and 569.099 (tampering with computer users), and Mo. Rev. Stat. § 537.525 and, as set forth in paragraph 82, below, were done knowingly and without authorization or without reasonable grounds to believe that they had such authorization.

76.     For purposes of this act, Plaintiff and Class Members are the owners or lessees of the computer systems, computer networks, computer programs, computer services, or data that are subject to Defendants' tampering activities.

77.     Defendants violated Mo. Rev. Stat., § 569.095(1), which prohibits tampering with computer data by modifying data or programs, in that Defendants accessed Plaintiff's and Class Members' Adobe Flash Player software and data storage, which Defendants purposefully modified and altered to cause Plaintiff's and Class Members' Flash Players to function as tracking files, and to cause the privacy control mechanisms in Plaintiff's and Class Members' browser software to be materially impaired, ineffective, or of diminished utility.

78.     Defendants violated Mo. Rev. Stat., § 569.095(3), which prohibits tampering with computer data by disclosing or taking data residing internal to a computer, in that Defendants repurposed Plaintiff's' and Class Members' Adobe Flash Player software and used its storage to

18

store data and retrieve it on Plaintiff's' and Class Members' subsequent visits to Defendants' website; Defendants would otherwise not have been able to subsequently retrieve such data and add it to their compilation of data about Plaintiff's' and Class Members'. web browsing and use such compiled data for Defendants' own business purposes. In addition, Defendants disclosed such retrieved data and/or compiled data to third parties, including third-party ad networks.

79.     By Defendants' conduct alleged in paragraph 7878, Defendants violated Mo. Rev. Stat., § 569.095(5), which prohibits tampering with computer data by accessing a computer and intentionally examining information about another person, in that the data Defendants retrieved from Plaintiff's and Class Members' respective computers was information about Plaintiff and Class Members that Defendants were not entitled to retain and subsequently retrieve, examine, and use for Defendants' independent commercial purposes.

80.     Defendants violated Mo. Rev. Stat., § 569.095(6), which prohibits tampering with computer data by receiving, retaining, using, or disclosing data Defendants knew or believed to have been obtained in violation of Mo. Rev. Stat., § 569.095, in that Defendants, themselves, installed the tracking files described herein, used such tracking files the purposes for which Defendants installed it, which purposes specifically included perpetration of the conduct alleged in paragraphs 7777 through 7979; accordingly, Defendants knew that their receipt, retention, use, and disclosure of data as alleged above was the expected and intended result of their own purposeful conduct.

81.     Defendants violated Mo. Rev. Stat., § 569.099(1), which prohibits tampering with computer users by accessing or causing accessing or causing to be accessed any computer in that Defendants, in that, as alleged above, Defendants stored, accessed, and retrieved data from Adobe Flash LSOs they placed on Plaintiff's and Class Member's computers.

82.    Defendants' tampering with computer data was done knowingly and without authorization or without reasonable grounds to believe that it had such authorization in that Defendants purposefully engaged in the conduct alleged in paragraphs 7777 through 80 unexpectedly and surreptitiously and without obtain permission from Plaintiff and Class Members and without providing them any reasonable opportunity to detect or agree to Defendants' modification of their Flash Player and web browser programs and data or Defendants' receipt, retention, use, and disclosure of the above-described information from and about Plaintiff and Class Members.

83.    In accordance with Mo. Rev. Stat., § 537.525, Plaintiff and Class Members are entitled to pursue civil claims for relief to recover compensation for their damages as alleged above, and for the costs and reasonable attorneys' fees incurred with regard to bringing this action.

## COUNT II
## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT

84.    Plaintiff re-states and incorporates paragraphs 1–83 as if fully set out herein.

85.    Missouri's Merchandising Practices statute prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. Mo. Rev. Stat § 407.020.43.

86.    Defendants' conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that:

20

    A.     Defendants stored and used repurposed Adobe Flash LSOs on Plaintiff's and Class Members' computers without adequate notice or consent.

    B.     Defendants disclosed Plaintiff's and Class Members' personal information to third parties without consent and authorization.

87.    Defendants concealed, suppressed, or omitted the material fact that they would collect and obtain the private information of Plaintiff and Class Members in connection with the sale and/or advertisement of goods and/or services offered on their website.

88.    Defendants surreptitiously took from Plaintiff and Class Members personal information they did not want Defendants to have and which exceeded Defendants' authorization to take and Defendants consumed the valuable computer resources belonging to Plaintiff and Class Members in the process.

89.    The personal and confidential information of Plaintiff and Class Members was property belonging to them.

90.    In addition, the right of Plaintiff and Class Members to use their computers, without having their Flash Players repurposed and their computer storage contaminated with LSO tracking files constituted a significant right relating to the use of specific personal property, without interference by Defendants through deception, false pretenses, misrepresentation, and unauthorized access.

91.    Plaintiff and Class Members have purchased merchandise from www.radioshack.com primarily for personal, family, or household purposes and thereby suffered an ascertainable loss of money or property, real or personal, as a result of Defendants' unlawful conduct as alleged herein.

21

92.     Plaintiff and Class Members have sustained and/or will imminently sustain losses, injuries, and damages which include, but are not limited to, those alleged in paragraph 6262, above.

## COUNT III
## COMMON-LAW TRESPASS TO CHATTELS

93.     Plaintiff re-states and incorporates paragraphs 1–92 as if fully set out herein.

94.     Defendants' actions as alleged above also constitute trespass of Plaintiff's and Class Members' personal property in violation of Missouri common law, for which they are entitled to recover their actual and nominal damages as alleged herein.

95.     Plaintiff's and Class Members' computers, computer programs, computer systems, and computer networks constitute their separate respective items of personal property, of which they had possession.

96.     The right of Plaintiff and Class Members to use their computers without having unwanted tracking files placed on them constituted a materially valuable right relating to the use of specific personal property belonging to Plaintiff and Class Members.

97.     The right of Plaintiff and Class Members to exclude others from accessing their computers and private information contained on their computers constituted a materially valuable right relating to the use of specific personal property belonging to Plaintiff and Class Members.

98.     Likewise, the "electronic diary" of private and proprietary data, (*i.e.*, uniquely identified, personal, financial, web browsing data and other personal, private, and confidential information), as recorded and maintained on their respective computers, also constitutes Plaintiff's and Class Members' personal property, of which they had possession.

22

99. Plaintiff and Class Members each had and have a legally protected economic interest in their personal information.

100. By intentionally placing LSO tracking files on the computers belonging to Plaintiff and Class Members, through deception and in violation of a Missouri penal computer tampering statute, Defendants deliberately intermeddled with chattels of Plaintiff and Class Members, and deprived Plaintiff and Class Members of their right to use their computers without having such tracking files surreptitiously placed on them.

101. Defendants' intentional repurposing of Flash Player software and installation of LSO tracking files on Plaintiff and Class Members' computers wrongfully interfered with Plaintiff's and Class Members' rights to the private possession of said personal property. Defendants then proceeded to unlawfully take said personal property and carry the same away for its own uses, without notice, consent, or compensation to Plaintiff and Class Members. Examples of Defendants' actions in this regard include, but are not limited to, the following:

    A.    secretly invading Plaintiff's and Class Members' computers and computer files without their knowledge, consent or authority;

    B.    accessing, altering, and contaminating said computers with tracking files and processes that interfered with the Plaintiff's and Class Members' settings, processes, and operations of their respective computers;

    C.    planting and using tracking files and processes designed and intended to evade detection and deletion such that Defendants actively interfered with Plaintiff's and Class Members' ability to peacefully possess and control their own computers without Defendants' tracking and compiling a record their private actions; and

    D.    electronically locating, capturing and forwarding the Plaintiff's and Class Members' computer files containing certain personal, financial, and web browsing information stored therein, and misappropriating the same for Defendants' own economic gain.

102. Defendants' actions materially impaired the condition, quality, and value of Plaintiff's and Class Members' computers. By installing and using LSO tracking files, Defendants altered the

functionality and performance of Plaintiff's and Class Members' computers on an ongoing basis and defeated their web browser's security and privacy controls.

103.    Defendants' actions constitute the common-law tort of trespass to chattels and directly and proximately caused actual and nominal damages to Plaintiff's and Class Members' tangible and intangible property, including injury and damage to their computers and computer programs, and to their personal facts, information, and other data stored thereon. More specifically, Plaintiff and Class Members have sustained and/or will imminently sustain losses, injuries, and damages which include, but are not limited to, those alleged in paragraph 62, above.

## COUNT IV ·
## COMMON-LAW INVASION OF PRIVACY BY UNREASONABLE INTRUSION

104.    Plaintiff re-states and incorporates paragraphs 1–103 as if fully set out herein.

105.    Defendants' actions as described above, and as more specifically alleged in this Count, also constitute Invasion of Privacy by Unreasonable Intrusion upon Plaintiff and Class Members' seclusion and solitude in violation of Missouri common law, for which they are entitled to recover actual and nominal damages.

106.    Plaintiff and Class Members own and used computers to which third parties and/or members of the general public did not have access, for purposes they reasonably believed to be private and confidential. The personal and private information residing on Plaintiff's and Class Members' computers and the nature of Plaintiff's and Class Members' computer usage constitute secret and private subject matters. Plaintiff and Class Members have a right to keep that subject matter private.

107.    To connect to the Internet and browse websites, Plaintiff and Class Members used their computers and web-browsing software, which includes privacy controls designed to prevent improper and unauthorized tracking during and across web-browsing sessions. Plaintiff and

Class Members reasonably believed and legitimately expected their website browsing activities were private and confidential, as a diary of their web browsing activities reveals personal and sensitive information about the content they view. Similarly, Plaintiff and Class Members' expectations of privacy were based on the same interests they legitimately expected to enjoy while viewing printed materials in the solitude of their homes. Plaintiff and Class Members had no reason to suspect or believe that anyone, including Defendants, would be able to tap into their computers and computer software, plant hidden tracking files, monitor their web browsing activities, and compile information they held and considered to be private and confidential. Defendants thus obtained information about Plaintiff and Class Members through unreasonable means. Defendants' unreasonable intrusions upon the privacy of Plaintiff and Class Members were of a kind that would be highly offensive to a reasonable person as the result of conduct to which a reasonable person would strongly object.

108.   Defendants' deployment and use of repurposed Adobe Flash LSOs constitute an intentional and unreasonable intrusion upon Plaintiff's and Class Members' solitude and seclusion. Defendants intentionally pursued the course of conduct described herein, in violation of a Missouri computer tampering statute, and knowing, or being substantially certain, that it lacked the necessary legal authority or personal permission to engage in this activity. Examples of Defendants' offensive and intrusive actions in this regard which include, but are not limited to, the following:

A.   hacking and repurposing Plaintiff's and Class Members' computers, browsing software, and information files;

B.   accessing, altering, and contaminating said computers with tracking files and processes that interfered with the Plaintiff's and Class Members' settings, processes, and operations of their respective computers;

C.   planting and using tracking files and processes designed and intended to evade detection and deletion such that Defendants actively inter-

fered with Plaintiff's and Class Members' ability to peacefully possess and control their own computers without Defendants' tracking and compiling a record their private actions; and

D.      monitoring Plaintiff's and Class Members' private and confidential inquiries and activities, *e.g.*, their web browsing related to personal, financial, and medical matters and using that information for Defendants' own economic gain.

109.    Defendants' actions directly and proximately caused Plaintiff and Class Members actual and nominal damages they seek to recover in accordance with Missouri law. More specifically, Plaintiff and Class Members have sustained and/or will imminently sustain losses, injuries, and damages which include, but are not limited to, those alleged in paragraph 62, above.

## COUNT V
## COMMON-LAW UNJUST ENRICHMENT

110.    Plaintiff re-states and incorporates paragraphs 1–109110 as if fully set out herein.

111.    Defendants' actions as described above, and as more specifically alleged in this Count, also constitute Unjust Enrichment, for which Plaintiff and Class Members are entitled to pursue equitable remedies in accordance with Missouri law.

112.    Defendants depend on strategic marketing and merchandising in order to maximize sales and profits. The personal and private information belonging to Plaintiff and Class Members as described herein is economically valuable to Defendants because the information is marketable; it facilitates more effective and profitable marketing and merchandising; and is marketable. Through Defendants' use of LSO tracking files and sharing of Plaintiff's and Class Members' personal information with third parties, Defendants have developed methods to acquire such information without paying for it, *i.e.*, by surreptitiously taking it. Defendants intentionally engaged in and perpetrated such conduct against Plaintiff and Class Members, without notice, consent, or proper authority, and without paying them any compensation.

113.    Defendants were not entitled to receive this valuable personal and confidential information from Plaintiff and Class Members. Defendants benefitted from the information it obtained by using it to improve its marketing and merchandising activities. As a result, Defendants have received, and continue to receive, money to which it is not entitled.

114.    Plaintiff and Class Members suffered detriment as a result of Defendants' illegal operative acts, which include, but are not be limited to, the following:

      A,      misappropriation of Plaintiff's and Class Members' computers for the purpose of secretly installing tracking files and executing tracking processes, which consumed economically valuable storage space and computer processing resources;

      B.      accessing, altering, and contaminating said computers with tracking files and processes such that Defendants actively and repeatedly consumed Plaintiff's and Class Members' computer resources and interfered with their ability to peacefully possess and use their own computers without Defendants watching;

      C.      electronically capturing and taking certain computer information belonging to Plaintiff and Class Members which contained economically valuable personal, financial, and web browsing information; and

      D.      misappropriating, receiving, and using said computers, files, and personal information for Defendants' own economic enrichment.

115.    Defendants' actions in this regard entitle Plaintiff and Class Members to equitable remedies for Unjust Enrichment inasmuch as Defendants misappropriated and received the beneficial use of the Plaintiff's and Class Members' computers, software, storage devices, and the economically valuable marketing information and data stored thereon.

116.    Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the Plaintiff's and Class Members' expense and in violation of Missouri criminal statutes prohibiting computer tampering, and therefore restitution and/or disgorgement of such economic enrichment is required. In this regard, the Plaintiff and Class Members are en-

titled to restitution and other relief which would include, but not be limited to, those alleged in paragraph 62, above.

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, prays the Court grant certification of this case as a class action pursuant to Missouri Rule of Civil Procedure 52.08 and Mo. Rev. Stat., § 407.025(3); appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel; award appropriate monetary damages to Plaintiff and the proposed Class; require Defendants to pay restitution for its unjust enrichment, which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award pre- and post-judgment interest in an amount which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class.

28

Plaintiff's counsel as Class Counsel; award appropriate monetary damages to Plaintiff and the proposed Class; require Defendants to pay restitution for its unjust enrichment, which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award pre- and post-judgment interest in an amount which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class.

Dated this ___ day of January, 2013.

> STEPHANIE HANSON, Individually, and on Behalf of a
> Class of Similarly Situated Individuals, Plaintiff

By: _____

David L. Steelman, #27334
dsteelman@steelmanandgaunt.com
Stephen F. Gaunt, #33183
sgaunt@steelmanandgaunt.com
Patrick J. Horsefield, #50380
phorsefield@steelmanandgaunt.com
STEELMAN, GAUNT & HORSEFIELD
901 Pine Street, Suite 110
Rolla, Missouri 65401
Tel:    (573) 458-5231
Fax:    (573) 341-8548

COUNSEL FOR PLAINTIFF

28

# ATTACHMENT A

## Comparison of Characteristics of Browser Cookies and Adobe Flash Player Local Shared Objects (LSOs)

| Browser Cookies | *Adobe Flash Player Local Shared Objects* |
|---|---|

### Characteristics and Operation

Subject to global standards................................*Subject to Adobe specifications*

Set/used only by originating website.................*Set/used by multiple websites* \*

4 kilobytes ...............................................................*Up to 100 KB by default; may be larger*

Expires when user exits browser by default......*Persistent by default*

### User Controls

Can be controlled/deleted through browser.......*Cannot control and delete through browser* \*\*

Origin Website is identifiable ............................*Origin Website not reasonably identifiable* \*

Contents can be viewed ......................................*Contents cannot reasonably be viewed*

Controls are relatively apparent/usable .............*Controls are not reasonably apparent/usable*

\*   The Flash platform permits cross-domain LSO creation and use, *i.e.*, one website can set an LSO for another website or read an LSO set by another website.

\*\* The user would have to be aware of and able to use proprietary Adobe tools available on Adobe website.